# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW-JERSEY.

### JULY TERM, 1839.

---

## MARY MERWIN and others v. ISAAC SMITH, Sheriff, and others.

The general rule is, that when an injunction has been obtained upon the complainant's affidavit alone, and a motion is made by the defendant, upon filing his answer, to dissolve the injunction, affidavits cannot be read upon the argument of the motion either in support of the bill or answer.

The rule admits of exceptions. In cases of waste, affidavits are admissible in support of the bill, to prove acts of waste.

But affidavits will not be admitted in support of allegations contained in the bill, and not expressly denied by the answer. The practice of this court is in conformity with the rule adopted by the supreme court of the United States, viz: that the allegations of the bill will be taken as true when they are not met and denied by the answer; and if the answer does not fully meet the case disclosed by the bill, the injunction will be sustained.

Where new matter is contained in the answer, not responsive to the bill, which is relied upon as a ground for setting aside the injunction, the complainant may read affidavits in contradiction of such new matter.

On the hearing of a motion to dissolve an injunction, upon the defendant's answer to the bill, the charges in the bill, unless met by the answer, are to be taken as true, and the allegations in the answer are entitled to the same credit.

A technical denial of the complainant's bill will not in all cases dissolve the

[Merwin et al. v. Smith et al.]

injunction : that must rest in the sound discretion of the court, and depend on the peculiar character and circumstances of each case.

Judgment and execution creditors of a defendant in execution, whose property has been sold by the sheriff, stand in a position which fully entitles them to be heard upon an application for relief against the sheriff's sale ; and if the sale is in any respect illegal, it may be set aside at their instance.

Where the sheriff's advertisement, after specifying sundry parcels of land to be sold by the sheriff, adds, "together with all his (the defendant's) other real estate in the county of Atlantic, of which a more particular description will be given on the day of sale," it seems that the advertisement is defective, and insufficient to authorize the sale of any lands except those specified in the advertisement.

Some description, by which the property may be known, though imperfect in itself, is necessary.

The discretion confided to the sheriff as a public officer, in selling property, must not be unnecessarily or hastily interfered with, nor without the charges (against his conduct) being sustained by indisputable evidence. A sale by a sheriff, upon execution, in one parcel, of a large quantity of the defendant's property, which is readily susceptible of division, can never be justified upon any other ground than as being the best mode for making it bring the most money.

A property may be so circumstanced—one part so dependent on the other—as to require a sale in large parcels ; but the general rule is, that it must be sold in different parcels if plainly divisible.

A sheriff cannot require security of a duly authorized agent of the plaintiff in execution, for the performance of his contract, nor can he refuse the bid of such agent for want of the required security.

The exercise of the sheriff's discretion must be a legal one, and so controlled as to work no injustice or oppression.

A sheriff may refuse to take the bid of an irresponsible man, or of any one when he is well satisfied that the sale could only be embarrassed by accepting it.

THIS was an injunction bill, filed on the 10th of January, 1839, by Mary Merwin and James B. Longacre, of Philadelphia, and Joseph Moser and Andrew Merwin, of Brooklyn, in the state of New-York, against the sheriff of the county of Atlantic, and seven others, purchasers of real estate at a sale made by the said sheriff under executions against Joseph E. West. The bill charges, that on the 19th of November, 1838, Mary

Merwin entered up in the inferior court of common pleas of the county of Atlantic, a judgment against Joseph E. West, upon a bond with warrant of attorney to confess judgment, conditioned for the payment of six thousand dollars. That Longacre, Moser and Merwin, the other complainants, on the same 19th of November, entered up in the said court a similar judgment against the said Joseph E. West, upon a bond given to them, conditioned for the payment of nine thousand dollars: and that writs of fieri facias de bonis et terris, duly issued upon each of the said judgments to Isaac Smith, sheriff of the said county of Atlantic, by virtue whereof the complainants acquired a *lien* upon all the real estate of the said West, in the said county; which executions still remain unsatisfied. That at the time of the delivery of the said executions to the sheriff, there were in his hands three executions issued out of the said court of common pleas, upon three several judgments against the said West, amounting together to about nine hundred and fifty dollars; and one execution issued out of the supreme court of New-Jersey, upon a judgment against the said West, for about two thousand five hundred dollars—all of which were entitled to priority over the complainants' executions. That the sheriff, by virtue of the said writs of execution, or some of them, had set up advertisements of the sale of West's real estate, as follows : " By virtue of sundry writs of fieri facias, issued out of the court of common pleas of the county of Atlantic, will be exposed to sale at public vendue, on &c., at &c., all the real estate of Joseph E. West, viz : No. 1. The village of Catawba and improvement whereon the said West now lives :" and after thus specifying six tracts, the advertisement concludes, " together with all his other real estate in the county of Atlantic, a more particular description of which will be given on the day of sale." The bill, after setting out the advertisement at length, and also the advertisement inserted in the newspaper, which is similar to the foregoing, except that it states that the property was to be sold " by virtue of executions issued out of the common pleas of the county of Atlantic, *and out of the supreme court*"—states that the sale

was adjourned from time to time until the 27th of December, 1839, when the property was exposed to sale, subject to certain conditions, which are set forth in the bill. That there was annexed to the said conditions, an inventory and description of the real estate to be sold, specifying eleven different tracts and parcels of land, and that no other description was given. That one Joseph W. Gaskill, of said county, attended the said sale as the agent of the complainants, and before the commencement of the sale exhibited to the sheriff his written power of attorney for that purpose, duly executed. That tract No. 1 was cried off to Daniel E. Estell, for six hundred and ninety dollars. That there was upon and within that tract, as sold by the sheriff, a saw-mill, eight two-story frame dwelling-houses and lots of land, a large and elegant mansion-house and out-buildings which were erected at an expense exceeding ten thousand dollars; a store-house, backsmith's shop, wheelwright's shop, lime-kiln, lime-house, landing, two wharves, a fishery, a grist-mill seat and water power, and about twelve hundred and eighty acres of land, including three hundred acres of timber land. That at the time of the sale the tract was worth at least twenty-five thousand dollars; and that after the sale the purchaser boasted that the wood alone upon it was worth sixteen thousand dollars. The bill further charges, that the other ten tracts enumerated in the sheriff's inventory furnished on the day of sale, were successively sold; that the description of said tracts was defective; that in regard to some of them, the persons bidding did not know which of several different tracts was offered for sale; that under the description of fifty acres on Gravelly Run, and three hundred and fifty acres on the head of Gravelly Run, the sheriff sold all the claim of said West to all the cedar swamp on Gravelly Run, for twelve hundred and fifty dollars; that West owned no separate tracts of cedar swamp on Gravelly Run, but that the tracts so sold were part of an entire tract of six thousand acres; that the said tracts were sold without any specification of metes or bounds, or designating any monuments by which the limits thereof could be ascertained; and that since the sale the sheriff has run off and

[Merwin et al v. Smith et al.]

caused to be surveyed eight hundred acres of cedar swamp, being a part of said tract of six thousand acres, and that he is about to execute a deed therefor; that the said cedar swamp is valuable, the timber on a single acre, in some parts of the swamp, being worth more than was bid for the whole tract.

The bill further charges, that Gaskill, the agent of the complainants, was the highest bidder for each and every of the said tracts; but that the sheriff, although Gaskill was a freeholder and resident of the county, unlawfully and causelessly refused his bid, and struck the property off to others who were not the highest bidders. That the title to the land sold is undisputed, and that it was sold free of incumbrances, except a mortgage of six thousand dollars upon the Catawba tract. That the whole amount of said sales was about three thousand four hundred and forty dollars, insufficient to satisfy the sheriff's fees and the executions prior to the complainants', under which the sale was pretended to be made. That the residue of West's real estate was of little value; and that if the sheriff's sales were carried into effect, the plaintiffs' executions would be utterly defeated. That the Catawba tract was susceptible of division into a variety of lots and parcels, marked by distinct and obvious bounds; and that a small part of it, if fairly sold in separate parcels, would have been sufficient to satisfy all the executions in the sheriff's hands, under which the sale was pretended to be made. That the real estate sold by the sheriff was wantonly sacrificed by his illegal conduct in conducting said sale: that it did not bring one tenth of its value; and that the complainants, through their agent, were willing to have bid, and would have bid but for the illegal conduct of the sheriff, the whole amount of the incumbrances on said real estate. That the property was advertised only upon the executions issued out of the common pleas; that the amount of said executions was less than one thousand dollars, and that eight of the said tracts were sold after that amount was realized. That the sheriff intends to execute deeds pursuant to the pretended sale, and the purchasers are about to take possession.

[Merwin et al. v. Smith et al.]

The bill prays that the sheriff may be restrained from executing a deed to any of the purchasers; that the purchasers, their servants and agents, may be restrained from entering upon or taking possession of any part of the premises struck off to them respectively at said sale, and from exercising any act of ownership over the same; that the sales may be set aside as fraudulent and void; that any and every deed made under color of said sale before the service of the injunction, may be delivered up to be cancelled, and the purchasers to whom such deeds have been delivered may be decreed to release their interest in the premises acquired under the sale, with covenants of warranty against their own acts. The affidavit of two of the complainants is annexed to the bill, verifying particularly several of the material charges of the bill as true of their own knowledge. On filing the bill an injunction was granted by one of the masters of the court, pursuant to the prayer of the bill.

On the 27th of February, 1839, all the defendants filed a joint and several answer to the complainants' bill. The answer states, that the real estate of West was lawfully advertised by the sheriff, under the writs issued both out of the supreme court and common pleas of Atlantic. That at the sale a more particular description of the lands was given, the sheriff having procured the best description he could of the same: that the tracts were so described that they could readily be distinguished; and that the said tracts were severally struck off to the highest bidders. That Joseph W. Gaskill, about the commencement of the sale, exhibited to the sheriff a paper purporting to be a power of attorney from the complainants and Charles P. Moses and William B. Willis, authorizing said Gaskill to buy at said sale as their agent, but whether genuine or not the defendants are ignorant; that the sheriff read the paper, and stated to Gaskill that the persons whose names were subscribed to the paper were strangers to him; that, as he was informed, most of them lived out of the state, and that he could not take Gaskill's bid under that power of attorney without some security that he would comply with the conditions of the sale, but that if he would procure

proper security his bid would be received. That Gaskill was a man of little or no estate, real or personal; that he had lately failed, had been resident in the county of Atlantic but a short time, and while there had been employed as an agent of West; that he was not a man of sufficient property to answer his bid. That the Catawba tract was principally pine land, most of which had been cut off; that the improvements upon it, as alleged in the bill, were either entirely fanciful, or were but of little value; that the whole was subject to a mortgage of six thousand dollars, upon which large arrears of interest were due, and for the foreclosure of which a bill had been filed and was then depending in this court; and that at the time of the sale Gaskill publicly proclaimed that he held a lease upon said premises for two years. That the Catawba tract sold for its fair value; if sold in separate parcels it would not have brought so much, and in the opinion of the sheriff it was the best mode of selling the tract; that it ought to have been sold in no other way, and that at the time of the sale, Joseph W. Gaskill, the agent of Joseph E. West, requested that it should be sold altogether and as one tract. That West's cedar swamp on Gravelly Run was a tract well known by that name, the limits of which were sufficiently defined by the nature of the swamp; the cedars growing only in the swampy ground, so that the outer lines of the swamp are visible and distinct lines; that it was represented by West as consisting of two surveys, one made for fifty acres and the other for three hundred and fifty acres; that it was offered by the sheriff as all West's cedar swamp on Gravelly Run, *said* to consist of two tracts, one containing fifty acres more or less, and the other three hundred and fifty acres more or less, and struck off to Treen for twelve hundred and fifty dollars. That the description given of the property at the sale was intelligible and understood by all who attended the sale; that the title was in doubt, and other circumstances affected the sale of the swamp and deterred persons from bidding as they otherwise would have done. That the cedar swamp sold has since been surveyed, and found to contain between seven and eight hundred acres; and that the survey so

[Merwin et al. v. Smith et al.]

made contains the land sold by the sheriff, and none other. That a sufficient and intelligible description was given of all the tracts sold; that each of them was fairly struck off to the highest bidder; that Gaskill bid for none of the tracts except the first, and that he was not the highest bidder for that. That the sale was conducted by the sheriff in good faith, and expressly denies that it was made fraudulently and illegally on his part. The answer further states, that on the 12th day of January, 1839, at twelve o'clock, noon, the purchasers attended at the time and place specified in the conditions of sale for the delivery of the deeds, and that between the hours of twelve and two the deeds were delivered to the several purchasers in pursuance of the sale, and that the purchase money was likewise paid on that day, prior to the service of the writ of injunction; that the purchasers are now in possession of the premises, and that being so vested with the title and possession the injunction cannot divest them of the same.

The answer further denies all fraud, unfairness or illegality in conducting said sale, but states that the same was in all things fair, legal and just; and whether the sale was legal and vested the title in the grantees, were questions of law which could be tried in a court of law; and that the complainants should be left to procure their redress in that tribunal. The answer was sworn to by all the defendants, in the usual form.

The cause was heard at April term, 1839, upon the application of the defendants to dissolve the injunction upon the answer of the defendants to the complainants' bill.

Upon the hearing, the complainants' counsel offered to read in evidence certain affidavits, copies of which had been served upon the defendants' solicitor six days before the hearing.

*Wilson*, for defendants, objected, and insisted that the affidavits could not be read in contradiction to the answer. He cited, *Berkely* v. *Brymer*, 9 *Vesey*, 355; *Norway* v. *Rowe*, 19 *Vesey*, 148; *Clapham* v. *White*, 8 *Vesey*, 35; *Eden on Injunctions*, 79; *Hoffman* v. *Livingston*, 1 *John. Ch. Rep.* 211; *East-*

[Mérwin et al. v. Smith et al.]

*burn.et al.* v. *Kirk,* 1 *Ibid,* 444 ; *Roberts* v. *Anderson,* 2 *Ibid,* 202.

*H. W. Green* and *Vroom,* contra, contended that the affidavits were admissible. They insisted,

1. That the rule in regard to the admissibility of affidavits upon a motion to dissolve, was not settled. The court exercised a discretionary power respecting it. *Peacock* v. *Peacock,* 16 *Vesey,* 51.

2. That affidavits were admissible in cases of waste or irreparable mischief. That the case disclosed by the bill was analagous to a case of waste, and that the mischief sought to be prevented by the injunction was irreparable. *Langston* v. *Boylston,* 2 *Vesey,* 102 ; *Hanson* v. *Gardner,* 7 *Vesey,* 305 ; *Eden on Injunc.* 79 ; *Eastburn et al.* v. *Kirk,* 1 *John. Ch. Rep.* 444 ; *Peacock* v. *Peacock,* 16 *Vesey,* 49 ; *Gibbs* v. *Cole,* 3 *P. W.* 254.

3. That the affidavits were admissible in support of the allegations in the bill which are not denied by the answer. *Smythe* v. *Smythe,* 1 *Swanst.* 252 ; *Eden on Injunctions,* 236, *note f ; Ibid,* 80 ; *Halsted's Dig.* 242, *s.* 5. The rule does not apply to allegations in the bill of which the defendant in his answer professes ignorance, and neither admits nor denies. There the bill on the motion to dissolve an injunction is taken as true. But where an answer is attempted and partially made, without an express denial ; where the answer gives color to a denial, or raises a doubt about the allegations of the bill, affidavits in support of the bill may be read.

4. That the affidavits were admissible in denial of new matter contained in the answer, not responsive to the bill. The answer alleges that the deeds were delivered and the money paid prior to the service of the injunction ; that the defendants were seized and possessed of the land prior to the service of the injunction, and that their seizin and possession cannot be divested by the writ.

*I. H. Williamson*, in reply. The general principle is clear, that affidavits cannot be read in support of the bill, where the defendant relies upon his answer alone in support of his motion. The motion is to dissolve the injunction for want of equity in the bill. If the answer is evasive, or does not deny the whole equity of the bill, the injunction must be continued.

It has been decided by the supreme court of the United States, that on a motion to dissolve an injunction, all the material allegations of the bill not fairly met and answered, are to be taken as true. *Young* v. *Grundy*, 6 *Cranch*, 51. In Westminster Hall, on the other hand, they are not taken as true, but affidavits are admitted to prove them. The practice of the supreme court of the United States is adopted in this state, in the state of New-York, and generally in the United States.

All the material allegations of the complainants' bill are sufficiently answered, according to the practice of this court. As to their own acts and deeds, the defendants answer positively ; as to the acts and deeds of others, according to their belief.

The reason why the affidavits cannot be received is, that the defendant is entitled to the protection of his conscience, and upon this motion the truth of the answer cannot be tried. The court will not decide whether the bill or answer be true. *Clapham* v. *White*, 8 *Vesey*, 35.

Mere inadequacy of price is no ground for setting aside the sheriff's sale. Affidavits in support of the bill upon that ground alone would be immaterial upon this argument. *Williamson* v. *Dale*, 3 *John. Ch. Rep.* 292; *Livingston* v. *Byrne*, 11 *J. R.* 566.

BY THE CHANCELLOR. I am glad of an opportunity to have the rule settled respecting the admissibility of affidavits on a motion to dissolve an injunction. It is always a subject of difficulty.

The general rule is admitted to be, that where an injunction has been obtained upon the complainant's affidavit alone, and an answer is filed by the defendant, and a motion thereupon made

[Merwin et al. v. Smith et al.]

to dissolve the injunction, affidavits cannot be read either in support of the bill or answer. But there are exceptions to the rule, and the complainants' counsel insist that this case is within the exceptions.

The first exception to the rule which is relied upon is, that in cases of waste or irreparable injury, affidavits may be read in support of the bill to prove acts of waste; and it is insisted that the case presented by the bill is analagous to waste. But the cases are not analagous. The bill does not charge that any waste or destruction has been committed or threatened. The object of the injunction is not to restrain the defendants from the commission of any unlawful act, but to prevent their obtaining title or possession of property, which has been unlawfully sold by the sheriff. It is not a case of irreparable mischief.

The second exception contended for is, that affidavits will be admitted in support of allegations contained in the bill and not expressly denied by the answer. But this exception cannot be sustained. The practice of this court is in conformity with the rule adopted in the supreme court of the United States, viz: that the allegations of the bill will be taken as true, where they are not met and denied by the answer. If the answer does not fully meet the case disclosed by the bill, the injunction will be sustained.

The third exception is well taken. Where new matter is contained in the answer, not responsive to the bill, which is relied upon in any way as a foundation for setting aside the injunction, the complainant may read affidavits in contradiction of such new matter. If, therefore, the defendants' counsel intend to rely upon the new matter contained in the answer, in support of their motion to dissolve the injunction, the affidavits touching such new matter must be heard.

The defendants' counsel having intimated their intention not to use the new matter contained in the answer, upon the argument, the affidavits on the part of the complainants were not read, and the case was heard upon the bill and answer only.

*Wilson* and *I. H. Williamson*, for defendants, in support of the motion.

*H. W. Green* and *Vroom*, for complainants, contra.

The defendants' counsel cited, *Den ex dem, Inskeep* v. *Lecony*, *Coxe*, 39; *Den* v. *Zellers*, 2 *Hals*. 153; 7 *Hals*. 300.

The complainants' counsel cited, *Rev. Laws*, 432, *sec*. 9; *Den* v. *Zellers*, 2 *Hals*. 154; *Simonds* v. *Catlin*, 2 *Caine*, 66; *Woods* v. *Monell*, 1 *John. Ch. Rep*. 502; *Tiernan* v. *Wilson*, 6 *John. Ch. Rep*. 411; *Saxton's Rep*. 1, 55, 344.

THE CHANCELLOR. I have no hesitation in continuing the injunction in this cause until the hearing. There is enough in the facts admitted by the answer itself, to justify that course. The charges in the bill, for the purposes of this motion, are to be taken as true unless met by the answer, and the allegations in the answer are entitled to the same credit. This was the rule established on the argument, and I shall abide by that decision and treat the case accordingly. It by no means follows, that a technical denial of the complainant's equity, will, in all cases, dissolve the injunction. That must rest in the sound discretion of the court, and depend on the peculiar character and circumstances attending each case. But independent of these rules, it is manifest from the whole case that the aid of the court is due to the complainants, at least until they have the opportunity of taking the proofs. I shall consider it my duty, on this motion, to anticipate the decision on the merits no farther than to state my present views on some of the leading points of the case, not meaning thereby to conclude the defendants, if they think proper so to do, from discussing them again on the final hearing.

The complainants, being judgment and execution creditors, stand in a position which fully entitles them to be heard, and if the sale made by the sheriff is in any respect illegal, it may be set aside at their instance.

26

[Merwin et al. v. Smith et al.]

First, As to the advertisement of the sheriff. Two objections are taken to this : 1. That the one put up in the different townships was upon the executions in the common pleas alone, while that in the newspaper at Camden was as well upon the executions out of the supreme court as those in the common pleas. If this allegation had been true, the result would have been material, because the property sold was much more than sufficient to satisfy the executions issued from the common pleas, and it was sold in different parcels. By the answer I consider this part of the case fairly met : the sheriff says this statement is not true, for he advertised the property on the executions out of both courts, as well by the notices put up in the townships as that in the newspaper ; that the complainants have stated the notice correctly from the newspaper, and that the notices put up in the different townships were "substantially" the same. He then accounts for the one which complainants saw put up in the township, by saying that there were some drawn wrong and put up by mistake, but afterwards corrected. The word "substantially," it is insisted, is too general and evasive ; that the defendant should have gone on and set out particularly what the notice was which he did put up ; but this is too nice a distinction. Taken together, and giving it a fair meaning and construction, the defendant must be understood as declaring the notices to have been for a sale upon the executions issued from both courts, as well in the newspaper as in the advertisements, and as accounting for the complainants' charge in this respect by the mistake which he explains. This objection, therefore, is answered. But it is objected in the second place to this advertisement, that after specifying sundry lots and distinct parcels of property to be sold, the sheriff adds, "together with all his (the defendant's) other real estate in the county of Atlantic, of which a more particular description will be given on the day of sale ;" and that under such advertisement on the day of sale he gave a more specific description, and sold divers tracts of land. As to the lots sold under this description, a serious question is raised whether the law has been complied with. My impressions are so strong against its suffi-

[Merwin et al. v. Smith et al.]

ciency, that I would not, as to these lots, think it right to dissolve the injunction, if the case stood upon this ground alone. Is this, in fact, any notice at all? The ninth section of the act, entitled, "An act making lands liable to be sold for the payment of debts," makes it the duty of the sheriff to advertise the time and place where the *lands, tenements, hereditaments* and *real estate* will be exposed to sale, one of these notices to be put up in the township where the lands lie. This statute has some substantial object and meaning, and what can be more important than to inform the public what specific property is intended to be sold. A defendant may have many different parcels of land in a county, and unless it be in some way defined, so that the public may know what is intended to be sold, the great use of the notice is gone. I do not know that this question has ever been settled in our state courts. In the case of *Den* v. *Zellers*, 2 *Halsted*, 154, the judge at the circuit said nothing more than that "a small variance or inaccuracy in the description of the premises could not impeach the sale, when it appeared from the description it was fully understood what property was to be sold." This is an intimation that *some* description by which the property may be known, though imperfect in itself, is necessary. My present convictions are, that the advertisement is in this particular defective, and not a compliance with the law.

Second, As to the manner of conducting the sale. The bill charges, that the sheriff sold in one parcel the village of Catawba, embracing a saw-mill and water power, which produces annually six hundred dollars clear of all expenses, eight two-story frame dwelling-houses and lots of land, eight one-story frame dwelling-houses and lots of land, a large and elegant mansion-house and out-buildings which cost in its construction exceeding ten thousand dollars, a large store-house, blacksmith's shop, wheelwright's shop, lime-kiln, two wharves, a fishery, a grist-mill seat, and about twelve hundred and eighty acres of land; that the property so sold was worth at least twenty-five thousand dollars, and would command that price at a fair public sale; that the whole sold in this way for six hundred and ninety dol-

[Merwin et al. v. Smith et al.]

lars only over and above an incumbrance of six thousand dollars; and that the purchaser has since declared that the wood alone on the land was worth sixteen thousand dollars. This is a strong state of facts, especially when made under the oath of the party, and the manner in which it is met should be well considered. The sale of the entire tract in one parcel is not denied, nor the amount for which it sold; but it is alleged that a fanciful and imaginary value and description have been given to this property; that the mansion-house and property is an entire establishment, and that the land is essential to it and must be sold with it; that the small houses are only residences of laborers and wood-cutters, and that no person would want a part without the whole of the establishment. It is further urged that there was a mortgage on the entire property of six thousand dollars, which rendered it proper that it should be sold in one lot.

I will not decide, at present, on the propriety or impropriety of the sheriff's course on this part of the case, nor indeed should I until the facts are more fully before me. The discretion confided to him as a public officer, in selling property, must not be unnecessarily or hastily interfered with, and certainly not without the charges being fully sustained by indisputable evidence; but this wholesale method of disposing of a defendant's property can never be justified upon any other ground than as being the best mode for making it bring the most money. A property may, indeed, be so circumstanced, one part so dependent on the other, as to require a sale in large parcels; but the general rule is, that it must be sold in different parcels if plainly divisible. *Woods* v. *Monell,* 1 *John. Ch. Rep.* 505; *Tiernan* v. *Wilson,* 6 *Ibid,* 413.

A defendant in execution has his rights, and his property is not to be sold under disadvantageous circumstances. In this case, the result of the sale would seem to have been peculiarly unfortunate; for the charge in the bill is plainly made, that the purchaser has boasted that the wood on the premises, for the whole of which he gave, including the incumbrances, less than seven thousand dollars, is worth sixteen thousand dollars. This

is not met by the answer in any way. I am willing to have the witnesses examined on this part of the case, before the sheriff's title is passed to the purchaser.

Third, As to the bid of Gaskill, the agent. The facts respecting him are disclosed by the answer itself. The complainants, being execution creditors to the amount of fifteen thousand dollars in the hands of the sheriff, appointed this man their agent, with authority to buy for them in case a sale was made. When he came to act for his principals, he produced his written power of attorney, under their hands and seals, and offered to leave it with the sheriff. The sheriff declined receiving his bid without he gave security. This was the same thing as shutting him out altogether. The consequence was the complainants, who had a deep interest, were in fact unrepresented at the sale. The whole property was sold for a little less than to satisfy the prior executions, and their demands were completely lost. The sheriff had no right, in my opinion, to deny to this agent the privilege of being a bidder for his principals, upon any ground yet exhibited in the cause. He was a freeholder in the county, though for a small amount, and his character no way impeached. He was to bid on the credit of his employers, and not his own. In the case of *Stevenson and Woodruff* v. *Black*, *Saxton*, 344, it was held, that a sheriff had no right to insist on any terms at a sale not warranted by law, or to create liabilities which the law does not impose. Can it be that a sheriff may impose these extra. terms on a fair agent, fully authorized ?—terms which in effect preclude all opportunity of competition for the property, and the party be denied all relief, upon the pretext that it was the sheriff's discretion, and he may do as he pleases ? This exercise of the sheriff's discretion must be a legal one, and so controlled as to work no injustice or oppression. Had this bidder been allowed, it is not an improbable result that these entire executions might have been satisfied at this sale. The complainants say expressly they would have bid that amount. I do not intend to say that a sheriff may not refuse to take the bid of an irresponsible man, or of any one when he may be well satisfied the sale could only

[Merwin et al. v. Smith et al.]

be embarrassed by taking it. The propriety of such a course must, however, be always open to be judged of by the evidence. This is a different case. The bidder was an agent representing large execution creditors, and was to act on the faith due to them rather than himself. They were not present, nor were they apprised that this security would be required. As this objection covers the whole case, it is enough in itself to demand of the court a continuance of the injunction until it can be further looked into.

The fourth and fifth objections urged against this sale, relate to the sale of the cedar swamp and the enormous sacrifice of property. It is not necessary to express any opinion upon them at present, the case as to the propriety of continuing this injunction having been fully settled by the other points. If it shall turn out, however, finally, that upon a sale by the sheriff of two tracts, one of fifty acres and one of three hundred and fifty acres, it is proposed to convey a tract of near eight hundred acres, and that a property worth rising thirty thousand dollars has been by this whole course of proceeding sold for about three thousand five hundred dollars, it will call loudly for the consideration of the court.

There is one suggestion made on the argument which should be noticed; and that is that Mr. West, the defendant in the executions, may commit waste with impunity in the event of the injunction not being dissolved. As this is a mere suggestion, and there is nothing to justify any belief of collusion between him and the complainants, I cannot presume it will take place. Should any such case, however, be made to appear by proof hereafter, it is very easy to apply a remedy, by requiring the complainants to pay off the prior executions, or by dissolving the injunction. It is my intention, pending this controversy, that the property shall not be wasted.

Motion for dissolving the injunction denied.